The next matter on our calendar is United States v. Hassan Khan. Good morning. Good morning, Your Honor. You may proceed. May it please the Court, I'm Richard Willstatter, and I'm here on behalf of Hassan Khan. Your Honors, a court should not accept a guilty plea without ensuring that a defendant understands the crime to which he is pleading guilty and freely admits the factual basis for the plea. What we have here is an entry of a plea of guilty to a violation of 2422B. And that offense was only read to the defendant by reading a copy or the words of the indictment. No explanation of the elements of the offense was given to Mr. Khan at the time he entered the plea of guilty. No further explanation by the government about the nature of the offense and what the government would prove if the case went to trial, which is so often the case, given in district courts in the United States, was done here. What about his own statement at the plea, though? His own statement at the plea did not— In 2008 to 2013, I used the Internet while residing in New York, met a girl named X. I learned through the course of our discussions, etc. It goes on through another paragraph what he did. Can't we look at that? Of course you should look at that. And we contend that his statements did not amount to a violation of 2422B. The reason that that is true is because the government is sort of saying, well, even if he didn't admit that he used the Internet to induce somebody to engage in— I discussed these plans over the Internet in our chats. Well, the plans were the plans to go to England. That was— Meet her in England where she resided. Why was he going to meet her? Well, you can see that he believes that the crime here is statutory rape, essentially. And he says when he, in his letter to Judge Rakoff at page 106, that the purpose of his trip was both to backpack and to spend some time with N, the person we referred to. In April 2012, I did, in fact, visit her in England. And during our visit, we had sexual intercourse. During that time, she was the age of 15 and I was 24. Right. But he doesn't say that he used the Internet to induce her to commit the crime. He says he went there. And, in fact, the confusion that I referred to that's described in the— He doesn't say he set up the plan. He doesn't say anything like that. Your client pleaded guilty. You're now trying to question the validity of that guilty plea. He had counsel, and the crime was read to him. Now, you know, the question we have, to the extent you're saying that his guilty plea is factually insufficient, Judge Stoney, he's just read to you his admission. And your suggestion to us, well, it could be interpreted to mean that he only communicated with her about the backpacking, or what? I mean, if the communication in any way related to setting up the meeting, given that the purpose of the meeting was then their sexual relationship, I don't know how you can say this is a factually— He didn't say the purpose. He didn't say the purpose of the meeting had anything to do with his sexual relationship. He said his friendship became sexualized, and then he said he planned, he talked with her about going to England, and that he went there, and that while there, and this is what he says when he wrote his letter, I had no intention to commit anything illegal. He was caught in the moment. That's at page A106 of the appendix. But, of course, as you said, the crime is not what happened in England. The crime is what he used the Internet in order to do. And if I understand this now, since he didn't intend sexual relations, you're saying that the Internet communications weren't sufficient? That's correct. He didn't say that I used a facility in interstate commerce to induce someone to engage in sex. He didn't say that. What's apparent from his statement when he pleaded guilty, and from his statement that he made at the sentencing, and his statement that he wrote in his letter to Judge that he went to England and ultimately had sex with her, not that he never said, and the only thing that was read to him was the count of the indictment, which said that he induced her to send images of herself. He never said he did any such thing. The judge never made an inquiry. And it's really cavalier for a district judge to take a plea that exposes somebody to a guideline range of 292 or to 365 months with a 10-year mandatory minimum without ensuring the defendant really knows what he's doing. And that's what the Constitution of the United States and Rule 11 require. And it's very clear, as it was in that coffin case that I put in my 28J letter, that the defendant was certainly confused as to the nature of the offense. That's why he's writing about how he thinks the fact that he was caught in the moment and had sex with her when he was in England is the essence of the crime. Counsel? Yes. Assuming we agree with you that this was error, is it harmful error? It is harmful error. Would he have not pled if he had a chance? Yes. Yes. The defendant did not understand the nature of the crime to which he's pleading guilty. He never admitted that he used the Internet to induce this child to have sex with him, even though she was 15 years of age and she's still technically a child. He is a child. Right. Okay. But she's 15. This is not somebody who ever admitted that he tried to induce this person to have sex with him in England using the Internet. And that was what the government is now saying that he did. And he never said that he induced this child to send images of herself over the Internet. Now, I just wanted to point out that normally a district judge will say under Rule 32 The decision is that a 13-year-old, because that's when this all started, sent these photos, that she was the initiator of sending these photos. He never admitted that she sent him anything like that. That's not part of the admissions. That's part of the government's evidence. But to the extent your client's admissions are viewed in the context of the materials he was provided with, it's not like he was surprised or didn't realize that the government's theory was that these years of sending photographs that were, you know, depictions of nudity and masturbation and everything such as that, that that isn't the context in which your client is talking about his having set up. He didn't make any admissions to that. And what's more, the government is relying on the PSR, and there was no Rule 32 discussion. Did you read, did you go over the pre-sentence report with your lawyer? There was no discussion with the defendant as required by Rule 32I1A that the defendant actually had understood what was in the pre-sentence report and went over it with his trial counsel. So the court disregarded Rule 11 and disregarded Rule 32 and went on to impose an extremely long sentence and to impose an order of restitution waiving any kind of right to have a hearing on it, of half a million dollars, twice the maximum fine, without having any understanding, without going over with the defendant that he was waiving his right to such a hearing and that the court would otherwise have to hold a hearing as to the amount of restitution for somebody who's at that point indigent. So in the totality of the circumstances of this case, the defendant's guilty plea should not be allowed to stand because the defendant was, the district court did not explain what the defendant would have to plead guilty to in order to expose himself to this extremely long sentence. You know, for these reasons, we think the court should reverse this judgment and permit Mr. Kahn to plead anew. Thank you. Alex Ross-Miller May it please the court, my name is Alex Ross-Miller and I'm an Assistant United States Attorney in the Southern District of New York. The defendant's allocution to enticement of a minor to engage in sexual activity was supported by a sufficient factual basis for the district court to accept his plea. In addition, even had there been error in not requiring the defendant to allocute to certain activities described in the to-wit clause of the charge to which he pled guilty in the information, which there was not, any such error did not affect the defendant's substantial rights because there is no evidence whatsoever that but for such error the defendant would not have entered the plea. And I'd like to go very quickly, if I can, to the plea agreement, which of course was before Judge Rakoff in this case. And the plea agreement specifically stated as one of the enhancements that pursuant to United States Sentencing Guidelines 2G2.1b6, because the offense involved the use of a computer to coerce a minor to engage in sexually explicit conduct for the purpose of transmitting sexually explicit material live, offense level is increased by two levels. And that is specifically in the plea agreement at Appendix 36. That is just one of many facts that indicates that the defendant, in fact, knew what he was pleading to, in fact, knew that it included the solicitation of sexually explicit materials, and certainly knew that he was admitting to something that was illegal and wrong, as he stated in his allocution. What about the rest?  Yes, Your Honor. And it was here, certainly sufficient to meet the elements of the crime. The idea that because the defendant did not additionally allocute to portions of the to-wit clause simply lacks support in law. And there is no support here to suggest that the defendant must, in addition to allocuting sufficient to the elements of the crime, cover any number of other activities that were involved in the crime, particularly those when looking at whether the allocution was sufficient, particularly those that are described, among other places, in the plea agreement itself. It would have been useful if he allocated to more than he did, wouldn't it have? It certainly would have, Your Honor. I think that would have been useful, but certainly was not necessary. And in particular, with the context of, even were the court to assume, and I don't want to jump past the question of sufficiency, but even were the court to assume that there was error, the idea that the defendant would not have pled guilty if the court had simply said, and by the way, is the rest of the to-wit clause also accurate, as consistent with the plea agreement, there's just no evidence to support that whatsoever. And in fact, the court can look beyond the allocution and the plea agreement to look at the PSR, which was not objected to when the draft was submitted, which was not objected to when it was accepted by the district court. There was no argument about any of the facts included in that very long and detailed PSR, and certainly no objection to anything that the government stated in its sentencing argument. Was there an inquiry about the PSR, though, at the sentencing? There was some inquiry, again, to Judge Pooler's question before. Perhaps it would have been helpful to have even more questions about the PSR at the time, though I'm not sure I've ever heard Judge Rakoff referred to as cavalier before. Certainly an additional question . . . I'm asking a standard question. Do you have any objections to the factual statements that are made in the pre-sentence report? Was that ever asked of the defendant or his counsel? Yes, Your Honor. Well, I want to be very specific here. My recollection is that what was asked is . . . There was a colloquy. Let me say that. There was a colloquy where I believe Judge Rakoff said something like, I understand there were some minor disputes, but no material disagreements. Is that correct? The defense counsel said that that was, in fact, correct with respect to . . . I don't believe there were any material disagreements. Do I have that correct? Mr. Greco said that's correct, Your Honor. That's what you're talking about? That's exactly right, Your Honor, yes. The PSR, which, again, Judge Rakoff mentioned multiple times, was very lengthy, very detailed, included all of the conduct at issue here. There was certainly no objection. Not surprisingly, because that conduct had been included in the plea agreement itself, in the charge that Judge Rakoff read to the defendant immediately prior to his pleading guilty, and conduct that was included in the plea agreement that the defendant did say he had reviewed with counsel and understood. I think about restitution, and that is . . . I know he agreed to the $500,000 in the plea agreement and an appeals waiver on that as well, but usually you see some basis for the number. I mean, I didn't see anything. I know that the victim talked about how this conduct had affected her and her treatment and staying back in school and all that stuff, so there's a basis for victim payments, it seems like. But how about the support for the $500,000 itself? So, Your Honor, I'll answer that if I can in two parts. The first is to say that it is often the case that restitution is heavily litigated and that there are briefing papers back and forth and that it's discussed and that there is a debate over what would ground the restitution. Under the Victim and Witness Protection Act, 18 U.S.C. 363A.3, it makes clear that a court may order restitution in a criminal case to the extent agreed to by the parties in a plea agreement. And so here what you have is a situation where both parties, including the defendant, both parties were able to avoid that sort of protracted, potentially expensive, potentially very damaging litigation over the restitution. So, in the first instance, I'd just like to respond by saying that that sort of analysis isn't required in a case such as this where it's agreed to in the plea agreement. And I will also say, as a second part, there is nothing in the record about the amount of money, but this court has found that it is acceptable to include future losses in restitution. And so it is very easy to imagine, for example, an every other week therapy session for $400 going for the next 25 years, which sounds like a long time, but is in fact a fraction of this victim's life expectancy, to be half the amount, $500,000, and for the other half to be, for example, $10,000 a year of lost wages over the course of 25 years for a person who was a straight-A student, who went from a straight-A student who wanted to be a doctor to a high school dropout, as is in the record. Counsel, isn't it correct that the condition that the restitution be paid in full, not later than three months prior to the termination of the term of supervision, was appended to the written agreement and was not pronounced orally? It was a clarification to the oral pronouncement of sentence, and certainly, if anything, it redounds in the benefit of the defendant, who otherwise would have had to pay it immediately had no other clarification been issued. It would have had to be made immediately, and I want to add that there's this allegation that the defendant is somehow indigent at this point, which I'm not sure what support of any . . . But you say it's a clarification, though, because restitution can survive the expiration of the supervised release period, right? Yes, Your Honor, but I say it's a clarification only because it is a timing clarification with respect to the schedule as opposed to an additional burden, right? The restitution was what it was going to be, and . . . It's almost impossible to meet this test. I think he would have to earn $350,000 a year in order to pay off this restitution within the time specified. So if I could just go back . . . And he won't not have his medical license, we assume? Presumably, hopefully, Your Honor. But to go back to the issue that he is indigent or would be unable to make this, first of all, there's plenty of law that says that courts look at what is appropriate and the idea that the defendant may not have the money . . . I want you to go to my question, that this was added in the written version and wasn't pronounced orally. Ordinarily, that requires that the sentence be sent back to the district judge to either pronounce it orally in front of the defendant or remove this condition. Isn't that correct? As a general matter, I think that's correct, Your Honor. But here, this is, I think, a fairly standard condition that . . . But he claims it was not standard. This is part of his defense in this case. Yes, Your Honor. It was a later clarification that . . . A later addition to the written version that wasn't pronounced orally. Is that correct? Yes, Your Honor. Yes, of course. The timing was an addition. You're supposed to say it in front of the defendant, aren't you? You're supposed to say all the terms of the sentence. Yes, Your Honor, as a general matter. But there are certainly permissible clarifications subsequently. And we submit that this is one of those. And with respect to the question of the defendant's ability to pay, which I take it has some relevance to the court, this defendant had retained counsel below, has retained counsel here, and posted against a $5 million bond, posted $1 million in cash and property. So there's every reason to believe that the defendant would be able to make this payment tomorrow, let alone down the road. Counsel, you keep saying as a general matter, this was error of the district court not to pronounce this term with the defendant in front of him. Is not that correct? Yes or no? I don't believe that it was error not to pronounce the timing of the payment of restitution. Sometimes it pays to just go with the flow. I understand, Your Honor. And I don't want to be argumentative. Yet. It's our view that it's not error. But certainly, it's well addressed, I think, in the papers, that we believe that this type of clarification is acceptable, that it's permissible, that it is not an additional burden upon the defendant. And in fact . . . We decide that. Understood, Your Honor. And we submit our position. But certainly, I just do want to note that had the order at sentencing remained in place, the defendant would have had to pay that amount immediately. And so we think that's significant here. Subject to any other questions, of course, I'm happy to rest on our submissions. Thank you, Counsel. Mr. Wilstead, you're reserved two minutes for rebuttal. Thank you, Your Honor. I want to start by quoting from the restitution order at page 202 of the appendix that was written by the government and which says, The defendant shall make restitution payments in monthly installments of 15 percent of his monthly income to commence 30 days after the release of the defendant from custody. This was the document that was handed up at the sentencing. It was prepared by Mr. Rossmiller. And it doesn't say anything about the defendant having to immediately pay this. So what you heard from the government a minute ago . . . Apparently, he's alluding to the restitution statute. Yeah, but at the sentencing, this is what the judge endures. I think he's suggesting that but for this . . . No, he's saying that . . . I'm not saying that we necessarily agree with this, but I think that the argument is that had the judge not signed this, your client would have had to pay the whole amount immediately. Yes, we agree with that. Okay. But we're talking about the judgment now. He's defending the judgment. Tell us, my understanding was your main concern about the restitution order was that you thought your client hadn't been aware of it when he pleaded guilty. Are you now arguing that even if we find, even if we reject that argument, you have another challenge? Totally separate argument, of course.  Go ahead. So the argument with respect to this is that this is a burdensome addition to the punishment that was already imposed that is not permitted under the rules. And so I think that's a very simple matter. With respect to the restitution in general, in order to . . . It's such a serious matter that it requires the court to say to a non-lawyer, you know, I would normally decide what the restitution is, and I would have to find proximate cause under Paroline. You might not have to cite the case, but I would have to find that there's some proximate cause between the injury and so forth, and that there were actual losses. But by signing this and agreeing to this, you are waiving that. It has to be a knowing and intelligent waiver, a Johnson v. Zerbst waiver. Let me just finally say that the PSO shows the defendant was not able to pay a fine, had $240,000 in debt for student loans. And the fact that the defendant's mother and father helped him retain counsel is not the same as the defendant has the money. I was asking you a different question. If we are not persuaded that the plea had a defect with respect to the knowing waiver and the restitution there, what is your objection to the 624.216 order? I mean, do you want to go back so that Judge Rakoff would order something other than 15 percent of gross monthly income? He said that the defendant must pay the entire thing within the 10 years, and that is not what the court said when the defendant was sentenced. Right. That has to be vacated. Okay. Thank you. Thank you. Thank you both. We'll reserve decision.